IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD B.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 18-cv-4973<br>Magistrate Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald B.[1] filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c). For the reasons stated below, the Court grants the Commissioner's motion for summary judgment [15] and denies Plaintiff's motion for summary judgment [10]. The Commissioner's decision is affirmed.

## **I. PROCEDURAL HISTORY**

Plaintiff applied for DIB on February 11, 2014, alleging that he became disabled on June 1, 2008. (R. at 13, 156–159). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 87–

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

88, 92, 98–101). On March 8, 2017, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 34–61). The ALJ also heard testimony from Thomas A. Gusloff, a vocational expert (VE). (*Id.* at 36). The ALJ denied Plaintiff's request for benefits on June 7, 2017. (*Id.* at 13–25). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 1, 2008. (*Id.* at 15). At step two, the ALJ found that Plaintiff had severe impairments of chronic liver disease, right shoulder tendinitis, obesity, neuropathy, cervical degenerative disc disease with disc herniations, cervical stenosis, lumbar degenerative disc disease, right hip pain, chronic pancreatitis, umbilical and inguinal hernias, and arthritis. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id.* at 17). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform light work, except:

> [He] is limited to never climb ladders, ropes, or scaffolds and no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, bending, and twisting. The claimant can use the right upper extremity no more than frequently to reach overhead. The claimant must be allowed to use a cane as needed to get to and from the workstation. The claimant must be provided a sit-stand option allowing one to sit for one or two minutes after standing one hour.

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

(*Id*. at 18–19). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was capable of performing his past work as an auto damage estimator. (*Id*. at 24). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of June 1, 2008 through June 30, 2015, the date last insured. (*Id*. at 25). The Appeals Council denied Plaintiff's request for review on May 23, 2018. (*Id*. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Administration (SSA). 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Substantial evidence "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit

meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (internal quotations and citation omitted).

Therefore, "[w]e will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (internal quotations and citation omitted). "We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). *See also Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (standard of review is deferential).

### III. DISCUSSION

In his request for reversal, remand, or an award of benefits, Plaintiff challenges the ALJ's adverse decision at Step 3, arguing that the ALJ erred in determining that he did not meet Listing 1.04, which addresses spine disorders. Plaintiff then argues that the ALJ "ignore[d] critical evidence in the record," citing misstatements by the ALJ about certain records and questioning the "little weight" given to treating physician Dr. Kashow. (Dkt. 10 at 4). The Court concludes that the ALJ did not err at Step 3 and substantial evidence supports the ALJ's finding that Plaintiff was not disabled.[3]

---

[3] The argument section of Plaintiff's opening brief is approximately two and a half pages and cites to only one case. (Dkt. 10 at 2–4). Plaintiff's reply brief (Dkt. 18) does not fare better, repeating the same arguments and citing one additional case. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that

**A. Plaintiff Has Not Shown that the ALJ Erred at Step Three**

Plaintiff argues that the ALJ erred at Step 3 in determining he did not meet the requirements of Listing 1.04(A), which states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.[4]

Plaintiff bears the burden of proof to show that he meets or equals all of the requirements of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (an impairment "must meet *all* of the specified medical criteria.") (emphasis in original). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard…The reason for this difference [is that] the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532. Accordingly, Plaintiff must "identify the medical evidence showing that he [] would have satisfied the Step 3 criteria." *Nowakowski v. Berryhill*, 2017 U.S. Dist. LEXIS 148491, at *14 (N.D. Ill.

---

perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citations and quotations omitted).
[4] Plaintiff does not dispute that he challenges the ALJ's Step 3 finding only as to Listing 1.04(A). (Dkt. 16 at 3; Dkts. 10 and 18).

Sep. 13, 2017) (internal citation and quotations omitted). *See also Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012) (plaintiff bears burden to show he meets the listed impairment).

Plaintiff first contends that the ALJ erred because she "seem[ed] to only discuss the Listing as it pertains to lumbar issues [and] the criteria of Listing 1.04(A) as they relate to [Plaintiff's] cervical problems are not analyzed." (Dkt. 10 at 2–3). The Court agrees with the Commissioner that the ALJ sufficiently addressed Plaintiff's cervical issues. (Dkt. 16 at 3–8). The ALJ identified Plaintiff's cervical degenerative disc disease with disc herniations and cervical stenosis as severe impairments, discussed Plaintiff's cervical MRI, his reports of neck pain, treatments of physical therapy and steroid injections treatments for cervical radiculitis, and the relief he reported in his neck and cervical area from physical therapy and injections. (*Id.* at 15, 21–22). Thus the ALJ acknowledged, and the Commissioner does not dispute, that Plaintiff had spine disorders in both his lumbar and cervical area.

But Listing 1.04(A) requires that "a claimant have a condition *beyond* degenerative disk disease." *Hall v. Berryhill,* 906 F.3d 640, 645 (7th Cir. 2018) (emphasis added). Therefore the issue is whether Plaintiff has shown "evidence of nerve root compression [] characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." (Listing 1.04(A)).[5]

---

[5] It is undisputed that there is medical evidence in the record of a positive straight-leg raising test. (R. at 17, 389).

The Commissioner argues that Plaintiff failed to show that he met all of the Listing 1.04(A) requirements, particularly motor, sensory, and reflex loss. (Dkt. 16 at 4). The Court agrees. *See Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing."). As the ALJ noted, physical exams showed normal neurological functioning, normal muscle and motor strength, normal sensation, and normal deep tendon reflexes. (R. at 17, 22). In light of these findings, the ALJ could not conclude that all of the criteria of Listing 1.04(A) were met. (*Id.*).

Plaintiff argues that the Listing 1.04(A) criteria were satisfied because his November 2014 MRI, physical therapy records and Dr. Rakesh Garg's consultative examination show right arm numbness and weakness, absent biceps and triceps reflexes on the right, and limited range of motion in the cervical area. (Dkt. 10 at 3, citing R. at 777, 786, 685, 801). Plaintiff contends that the November 2014 cervical MRI "correlates to the clinical findings and subjective complaints about right arm numbness and weakness." (Dkt. 10 at 3). The November 2014 MRI identified broad-based disc bulge at C6-C7 of Plaintiff's spine and found this was "the most likely level for the etiology for the patient's right upper extremity cervical radiculitis." (R. at 736). In November 2014, Plaintiff's physical therapy treatment diagnosis included decreased cervical and shoulder range of motion and strength and muscle imbalance. (R. at 801). The physical therapist assessed significant deficits in strength and range of motion, and Plaintiff's muscle strength was 3 out of 5. (*Id.* at 802). In February

2015, the physical therapy record noted that Plaintiff had been discharged from physical therapy for neck pain in January 2015, and was being evaluated for right rotator cuff tendinitis. (*Id*. at 785). Plaintiff's muscle strength was evaluated as 4 out of 5 in all directions. (*Id*. at 786). Plaintiff reported continued finger tingling. (*Id*.). In May 2015, the physical therapist noted Plaintiff's chronic neck pain and limited mobility and Plaintiff's complaint of right hand tingling and weakness. (*Id*. at 777–78). On examination, Plaintiff's muscle strength was 4 out of 5; cervical compression was "inconclusive", and Plaintiff had "good tolerance" for a trial of mechanical cervical traction. (*Id*. at 778).

In July 2015, Dr. Garg completed a consultative examination of Plaintiff. As Plaintiff states, one of Dr. Garg's findings on examination was "absent bicep and tricep reflexes on the right side." (*Id*. at 685). Left side and knee and ankle reflexes were normal. (*Id*.). Among Dr. Garg's other findings were that Plaintiff's neck was supple, motor examination showed "normal strength in all four extremities," good vibration and pinprick in both legs, and Plaintiff was "able to walk without any problem." (*Id*.). Dr. Garg stated that although he did not have a copy of the cervical MRI, Plaintiff had "no motor weakness in the right arm." (*Id*.). Dr. Garg further reported that Plaintiff had some finding suggestive of cervical radiculitis on the right side and some limitation in his right shoulder movement because of torn ligaments, but the rest of the joints were normal. (*Id*.). Dr. Garg found Plaintiff had no problem with weight bearing or coordination of the hand. (*Id*.).

Missing from these records, however, is a finding of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." Listing 1.04(A). To the contrary, Plaintiff's muscle strength was 3 out of 5 in November 2014, and in 2015, it was 4 out of 5 and described as "normal." Dr. Garg's finding of absent bicep and tricep reflexes did not accompany any finding of motor loss. Instead he specifically found Plaintiff to have *normal* motor strength in all four extremities and "*no* motor weakness in the right arm." (R. at 685, emphasis added). Plaintiff does not address these findings by Dr. Garg.

Plaintiff relies on another consultative examination, by Dr. Muhammad Rafiq in May 2014, to argue that Dr. Rafiq's findings that Plaintiff could not heel-toe walk, had mild difficulty standing on his toes, and moderate difficulty squatting and rising were "indicative of loss of strength." (Dkt. 10 at 3, citing R. at 389). Plaintiff's characterization that Dr. Rafiq's findings were "indicative of loss of strength" are not supported by Dr. Rafiq's report which found that Plaintiff was able to get on and off the exam table with no difficulty, his gait was non-antalgic, grip strength in both hands was normal, range of motion in shoulders, elbows, wrists, hips, knees, ankles, and cervical spine was normal (though lumbar spine motion was reduced), deep tendon reflexes were "present, equal and symmetric," and "power was 5/5 in all limbs." (R. at 389).

In addition, other evidence in the record contradicts Plaintiff's contention that he met the listing requirements related to motor, sensory, and reflex loss. In November 2014, Dr. McGivney reported Plaintiff had "5/5 strength", no gross weakness, and

"deep tendon reflexes are intact." (R. at 751). In March 2015, Dr. McGivney reported that Plaintiff had "5/5 strength" and "normal sensation and deep tendon reflexes are 2+." (*Id.* at 440).

Plaintiff acknowledges that he relies in part on his own "subjective complaints about right arm numbness and weakness." (Dkt. 10 at 3). But his subjective complaints do not demonstrate that he met all of Listing 1.04(A)'s requirements, particularly in light of the objective findings in the record. *See Knox,* 327 F. App'x at 655 ("a claimant [] has the burden to present medical findings that match or equal in severity all the criteria specified by a listing."); *Hall,* 906 F.3d at 645 (listing 1.04(A) not met because plaintiff "has not pointed to any finding by a medical professional that he had a 'limitation of motion of the spine,' and 'motor loss' 'accompanied by sensory or reflex loss' [and] [t]o the contrary, several doctors found that Hall had a normal gait and range of motion.").

Indeed a finding of muscle atrophy requires a specific medical report, as described in Listing 1.00(E)(1).[6] *See Davis v. Berryhill*, 2018 U.S. Dist. LEXIS 156892, at *33 (C.D. Ill. Sep. 13, 2018) (muscle atrophy "must be determined by detailed measurements of size and strength."). In *Davis*, the court noted that Listing 1.04(A) was "very specific" and all the criteria were not met because "[n]o examination

---

[6] "[A] report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters. Additionally, a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength. A specific description of atrophy of hand muscles is acceptable without measurements of atrophy but should include measurements of grip and pinch strength." Listing 1.00(E)(1).

documented any muscle atrophy." *Id.* at *39–40. "[Plaintiff] cited evidence of degenerative disease in her lumbar spine resulting in pain and loss of range of motion, and positive straight leg testing. She has not, however, cited evidence of motor loss resulting in atrophy and sensory reflex loss." *Id.* at *42. *See also Ray v. Berryhill*, 2017 U.S. Dist. LEXIS 147182, at *7 (S.D. Ind. Sep. 12, 2017) (listing 1.04(A) not met where evidence did not show atrophy with associated muscle weakness or muscle weakness). The only case Plaintiff cites that addresses Step 3 is *Ribaudo v. Barnhart*, 458 F.3d 580 (7th Cir. 2006) (Dkt. 18 at 2). *Ribaudo* is distinguishable because the ALJ's Step 3 discussion was a total of two sentences, did not mention Listing 1.04(A), and did not discuss any of the evidence favorable to plaintiff for meeting the criteria of Listing 1.04(A). *Id.* at 583–84. Here, the ALJ specifically discussed Listing 1.04(A) and evidence favorable to Plaintiff and explained why she concluded that Listing 1.04 was not met.[7]

Finally, Plaintiff does not address the fact that two state agency doctors concluded that Plaintiff did not meet or equal Listing 1.04 (R. at 68–70, 81–85), or identify any medical opinion that contradicted these opinions. *See Knox*, 327 F. App'x at 655 ("Two state-agency physicians concluded that Knox's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary."); *Filus*, 694 F.3d at 867 ("Because no other physician contradicted these two opinions [that Plaintiff

---

[7] The Court agrees with the Commissioner that the ALJ is not required to discuss her listing analysis in only one section of the opinion. (Dkt. 16 at 7–8). *See Imse v. Berryhill*, No. 18-1817, 2018 U.S. App. LEXIS 33139, at *9 (7th Cir. Nov. 26, 2018) (rejecting plaintiff's argument that the ALJ did not analyze whether her impairments met the spine disorders in Listing 1.04 because the ALJ assessed the medical findings throughout the opinion); *see also Summers v. Colvin*, 634 F. App'x 590, 593 (7th Cir. 2016).

did not meet or medically equal any listed impairment], the ALJ did not err in accepting them."). In a cursory challenge, Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of his treating doctor, Dr. Kashow. But Plaintiff does not cite any opinion by Dr. Kashow that contradicts the opinions of the state agency doctors, and as discussed below, this Court finds that the ALJ did not err in giving little weight to Dr. Kashow's opinions.

**B. The ALJ's Decision was Supported by Substantial Evidence**

Plaintiff argues that the ALJ ignored "critical evidence in the record," largely focusing on minor mistakes made by the ALJ. (Dkt. 10 at 4). Discussing the evidence he believes the ALJ ignored, Plaintiff points to only one alleged omission: in a 2015 MRI of his right shoulder, there was a finding of "diffuse fibrillation and fraying of the labrum." (Dkt. 10 at 4, citing R. at 735). Plaintiff describes this finding as "ominous" but does not explain its significance or how this finding should have altered the ALJ's RFC analysis. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). In fact, the RFC includes a requirement that Plaintiff "can use the right upper extremity no more than frequently to reach overhead." (R. at 18). As the Commissioner points out, the ALJ's RFC finding was *more* restrictive than the state agency doctors' opinions (who found him capable of medium work), and the ALJ credited Plaintiff's claimed need for a cane and sit-stand option. (*see* Dkt. 16 at 9).

Plaintiff challenges the ALJ's decision to give Dr. Kashow's opinion little weight. (Dkt. 10 at 4). This cursory challenge is waived. *See Hall*, 906 F.3d at 644 (perfunctory and undeveloped argument waived). Even if this Court did not consider this argument waived, it is not convincing. A treating doctor's opinion that is consistent with the record generally receives controlling weight (*Hall*, 906 F.3d at 643) but "an ALJ may discount even a treating physician's opinion if it is inconsistent with the medical record." *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013).[8] The ALJ explained that Dr. Kashow did not provide any explanation or reference to medical examinations to support his conclusions about Plaintiff's limitations and his conclusions contradicted the medical record. (R. at 23). And again, Plaintiff does not explain how giving more weight to Dr. Kashow's opinions would have impacted the ALJ's RFC finding or conclusion that Plaintiff was not disabled.

Therefore, the ALJ built a logical bridge between the evidence and her conclusion that Plaintiff was not disabled and could perform his past work. The Court declines to reweigh the evidence or substitute its own judgment for that of the ALJ. *See Shideler*, 688 F.3d at 310.

---

[8] In 2017, the SSA adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules only apply to disability applications filed on or after March 27, 2017, they are not applicable here. *See id; see also* SSR 96-2p.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [10] is **DENIED**, and the Commissioner's motion [15] is **GRANTED**. The final decision of the Commissioner is affirmed.

E N T E R:

Dated: May 20, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge